May it please the court, Don Shanahan, Deputy City Attorney, representing the appellant Jonathan McCarthy. This case involves a officer involved shooting resulting in the death of the suspect. The question before the court is whether or not the district court's order denying summary judgment based upon qualifying immunities should be overturned and more specifically the court relied on Cruz v. City of Anaheim and whether that the court applied the applicable standards. In Cruz the court found that when there's a sole survivors are the police officers. Now the plaintiff's proffered an expert Mr. Turvey. Correct. Mr. Turvey provided the court with an account of the shooting. In contrast to Mr. McCarthy's testimony the plaintiff the expert had the distance is three to four feet. The expert proffered that Mr. Ortega could not have been reaching for McCarthy's pistol and basically said that Mr. Ortega was below Mr. McCarthy was shot in the back of the neck and was shot while he kneeled or bowed. Do you accept those facts for purposes of this argument? I accept the fact that he was three to four feet away. I accept the fact that he was. Well do you accept more generally do you accept Mr. Turvey's account of the way the shooting occurred? Correct. For purposes of this argument. You do? Yes. Well there goes qualified immunity. Well your honor I don't think so because if he's if the dispute is whether or not he as McCarthy says he was one to two feet away when he was reaching or two to four feet away that that's really immaterial. He's still a threat. The question is whether or not the Mr. Ortega was coming at him with his arms reached and the fact that he might have been four feet away doesn't make him any less of a danger. In fact our expert Mr. Lewinsky who's a behaviors expert testified or at least submitted a report that a individual average individual can traverse three feet in a third of a second. But counsel the the trajectories the wound paths are more more difficult for you to explain. It's a more serious inconsistency. So I'm looking at 3 ER 362 which which shows these trajectories and I think that your version of these would be that the that the wound to the abdomen must have come first because then it's angled front to back down and then as the decedent leaned or perhaps collapsed forward he was then in a position to be shot in the back of the neck so that that trajectory could go as you know it did from that from the back of the neck towards the chest towards the front of the chest. Correct. But so it's possible certainly to get that lined up so that it lines up I think roughly with the officer's testimony but the officers accept that the officer's testimony is that he shot when they were both back up and so the victim was not below him and that he should he he shot when when the victim was level with him and I can't reconcile that with this wound trajectory. I think his testimony was that when he was the officer got up and the defendant was started to reach up towards him was coming towards him and then he shot. He uses the word level level with him. So that seems to be a more getting back to Cruz that seemed to be a more compelling inconsistency that's that's difficult but let's move on to the next one if we could because I want to make sure you have an earwitness and eyewitness testimony the eyewitness saying that the victim was not shouting said are you kidding me but he sounded compliant and the eyewitness testimony who are turned away after watching most of the altercation because she thought that the victim had been subdued she thought the action was over. What about that? Yes your honor. With respect to are you kidding me I'll sue you. Well first of all the witness didn't see any of this he just heard it. Right that's the earwitness testimony. That's correct. Yeah that's what I said. And the statement itself are you kidding me I'll sue you are not compliant statements just the statements themselves. Okay. So I would I would suggest that that does not comport with the witness's testimony. Secondly the witness would be basically testifying as to the state of mind of Mr. Ortega. But what about the sound of the voice sounding compliant whatever that means. I don't. That's what we've got in the record. That's correct. It's not. So he's given up. Well but but that that's a subjective term by the by the witness. Well it's what we have counsel. But but the witness can't talk about the state of mind of what Mr. Ortega was doing at the time. But if I put the earwitness and the eyewitness together both of them seem to to make it sound like or be at least certainly be consistent and we have to construe all these like all these facts in the light most favorable that that the witness is saying she said she turned away because it was over. She thought the victim had been subdued. Well I think what she said was when she before she well she turned away because she was going to go out to the front door and look and see get a better view. She didn't turn away because she thought it was over. No but she thought it was over. But what she said what she said and if I might have a second around I'll try and get this. Sure. What she said was and I right before she turned and then I see the officer have a slight advantage. I'm peering through the blinds and I take my fingers away and then the blinds close and then she hears that or sees that. But what she said was he had a slight advantage and it looks like the officer was going to detain him and handcuff him. He did not believe that it was it was she thought he had the upper upper hand but they were still fighting when she left the. Well why didn't why isn't qualified immunity denied on the basis of McCarthy's various statements alone? He couldn't get his story straight. Well he tells one person something that this time next time when he's macked up he changes his story. He tells Karsh one thing. He tells another version in his deposition. He tells Sergeant Howley something else. Why are we here? Well the reference to Karsh was the whether or not the weapon was picked up and pointed towards him. Karsh readily admits in his and McCarthy denies that he ever said that. Karsh readily admits that he assumed the weapon weapon was picked up. This is what juries are for. What we have this isn't simply a series of controverted statements as between the plaintiffs and the defendants. These are the police officers who can't get their story straight. What am I missing? Your Honor what I'm trying to say is that McCarthy never made that statement. Karsh stated that he did and Karsh later on said you know I assumed he picked up the weapon because they said they had a struggle from from his years of experience in dealing with these kinds of situations. Normally when there's a struggle over the gun there's a seizure of it and what McCarthy said. Let me tell you exactly what he says. Let's deal with what he says. Karsh told the homicide team quote at some point during the fight Arthur McCarthy's spare weapon that's on his ankle and ankle holster was dislodged. It fell to the ground. The suspects saw this picked up the gun and raised it toward officer McCarthy. That's what he said. That's what Karsh said. Yes and like I said when he was deposed. Is that a true statement or a false statement? It's not a correct statement. That was his interpretation of what McCarthy told us. It doesn't have it's not qualified. It doesn't say in my opinion or I believe or to the best of my recollection. This is a definitive statement of what happened and it's not that you know it's not in a deposition. It's not to an opposing counsel. It's to another police officer. But again that's Karsh and what we're what we're gonna end up is is actually. It's not just Karsh. He's an officer in the police department. He's one of McCarthy's supervisors. It's not some guy off the street. I understand that your honor. So he you think your best day is that Karsh misunderstood or made an assumption and said something that was just wrong right but that he didn't have any personal observations? That's correct. Okay okay but what about McCarthy himself? He told this story differently and I don't mean anything pejorative by using the word story but the sequence of events. He related it differently counsel and the way he related it was troubling to the district court because the district court couldn't figure out how he had enough hands to do all the things that once that he was doing. The taser the you know what I'm referring to. What about that? It just seems the district court thought not possible a person could have that the sequence could have played out the way Mr. McCarthy described it. What about that? Well it's he took one paragraph from the entire interview. What happened when McCarthy was interviewed he was describing in a general sense what happened and during that paragraph he never said well I put my taser back. Later on in fact the next paragraph if you follow the next paragraph he goes through it again in more details basically he says I had him on the ground I took out my taser I got his left hand behind my back behind his back I put my taser away started to get the right hand behind his back and then at some point handcuffed him I think. Well he had the left hand. Okay. Left hand. There's a lot going on. Well but that's possible as long as the taser is back in his pocket and that's what he described in the very next paragraph. But he's also reaching out and batting away the other gun. But he doesn't have the taser in his hand he's got he's well what happened is he had his left hand that is Ortega's left hand confined. Okay. Behind his back he's on his stomach. He's on his stomach. Okay. He was able to with his McCarthy with his right hand was able to get his right hand back McCarthy pulls away with his right hand and he looks over McCarthy looks over and sees the revolver on the ground and he slaps Ortega's hand away. So I mean certainly he had hands enough to do that. Wait he slapped his hand away but see that's another inconsistency at one point he said he didn't think that that it had even been seen that the gun had been seen. Well during the process during the fight initial fight he didn't think Ortega saw the weapon but as soon as Ortega got his right hand away he slapped the weapon away. In other words we have to go in sequence the revolver falls out they go to the ground at that point he didn't he said he's hoping Ortega didn't see the right hand away. That's when McCarthy reaches out. But on February 11th he testified that Ortega reached up and grabbed his revolver. In his deposition. Right and Ortega I mean I'm sorry McCarthy never McCarthy didn't say he grabbed his. He said quote he said Ortega quote reached up and grabbed his revolver. Grabbed four he reached out and grabbed we're talking there's two weapons his primary weapon and his secondary weapon. The secondary weapon is on the ground. And it's a revolver. That's the revolver. The primary weapon is a semi-automatic right. He reached out and touched the revolver he reached up as they were fighting once they got up and he were fighting he reached up to grab the pistol but he never got a hold of it. The only inference that he got a hold of the pistol was Karsh's statement. I'd like to reserve the rest of your time. Okay. Thank you. Good morning. May it please the court. My name is Christina Denning and I First I'd like to spend just a one moment addressing the propriety of this interlocutory appeal. In all of the moving papers or the appellant's papers officer McCarthy construes the facts in the light most favorable to him not the plaintiffs. The district court was correct in denying qualified immunity because plaintiffs have raised material issues of fact. So there's no reason for us to even be here. Assuming that we should be here turning to the materiality of the facts as to the constitutional issues. And I think instead of recapping the law because I understand that your honors are very familiar with the law. This is the third such case we've had in the last two days and we've got one more right after so you may assume. That's a good assumption. That we're well familiar with the law of 1983 in these cases. Let me just then address some of counsel's points that he raised with specific references to the record. First there's no evidence of any stippling or tattooing on the body of Victor Ortega that would even suggest that he was ever reaching for anything. The trajectory of bullets which Judge Kristen you you've already addressed that has Mr. Ortega in a flexed forward submissive position. And there's no indication. Or collapsing. How does he get shot in the stomach if he's in a flexed forward submissive position? And I don't know if you want to. He's down towards the ground. Flexed forward. But his head was not bowed down. So he was he was shot in the stomach because officer McCarthy was about four feet behind at least four feet. And and that's another thing our expert puts him at at least three to four feet. But counsel it would be consistent if officer McCarthy were above the victim and the first shot goes into the abdomen and then as the victim collapses forward the second shot is to the back of the neck right? That's correct. Except it only works if it's not a level shot and Mr. McCarthy was above the victim I think. That's the only way I can make that make sense. That's correct. Okay so if that's the case then the inconsistency between the medical evidence is the the level of the shooting. Who was up and who was down? It's the level of the shooting and we also have to note the grazing wound on the abdomen. Because the first shot shows him it's more proof that he was flexed forward because the he's lean he's over six feet tall and 182 pounds Mr. Ortega was. And the first one grazes his stomach and then goes and enters in a downward position into his abdomen. Again he's in a either kneeling submissive position most likely with his head up or else it would have hit him in the face. I mean to be neutral I don't know that it's submissive and I'm not sure that was the first shot it's just the only thing I can make sense of this is that the abdomen shot must have been the first shot and that the victim may have been as opposed to being submissive he may have been collapsing forward right? Right and it goes in in a downward position which shows that officer McCarthy was on top of or at least in a position superior or however you want to describe it. It's just not level he's higher I think that's the only way I can make sense of it and to be as neutral as possible on the factual evidence it seems to me that that's the inconsistency that the victim had to be lower than the officer. That's correct. Okay. We also have evidence of handcuffs on both of the wrists of Mr. Ortega. We also have. What evidence is that? The IME report, the autopsy report shows evidence of cuffs on both wrists. Wasn't he cuffed afterwards by other officers? According to officer McCarthy he's the only one that and that leads me to. But he was cuffed after he was shot. Isn't that standard procedure? Correct but there is. But that explains why there are cuff marks on both wrists it doesn't tell us whether or not McCarthy only got one cuff on the left hand. That's right. So I guess what's the materiality of that argument? The materiality is that it's only officer McCarthy that has this story and we really have to as Judge Parker had pointed out we have to look at the changing stories of officer McCarthy. And so as part of the whole circumstance. I just I want to make sure I understand what you're arguing. Are you arguing that from these facts the jury could conclude that McCarthy got handcuffs on both right and left wrists? Is that is that what you're saying? Sure I am. Are you are you arguing that he was what what is he are you you're arguing that he was shot when he was handcuffed? At least one cuff possibly two. We don't know. Officer McCarthy is the only eyewitness to the actual shooting. Was there no testimony from any of the other responding officers that they cuffed or did McCarthy say I cuffed him after he was shot? He said he cuffed him after he was shot and then he had to move the body out of the corridor. What he said is I went over to Ortega and fully cuffed him after the shooting. Right and then the autopsy or the I'm sorry the the scene photos will show that he only has one cuff on because he was then fully cuffed then uncuffed. Then uncuffed because they needed to administer medical. Right and and and and this really isn't you know the biggest point that I want to make about that the handcuffs. I mean it's the first time I'm hearing I didn't see this in your brief so. And I also want to point out that not one witness there are two people that claim to have seen part of the struggle. Nobody saw a gun. Nobody saw him reaching for a gun. So that begs the question was there even ever. Didn't this all take place in a very narrow hallway or corridor? It did. So were the witnesses able to see both men from head to toe based on where they were vis-a-vis the position of the witnesses? In terms of the depositions of Mr. LaRue and Ms. Marshall they testified as to what they saw and they specifically testified that they did not see anything lying on the ground. They had the vantage point. Well that's not my question. My my my question is we know where they were and we know where Ortega and McCarthy were correct? So my question is were they physically able to see from head to toe if a person was standing everything that would have occurred in that area? And all I can all I can say is I don't know because they weren't asked that on deposition. They were asked I specifically asked both of them what their vantage point was and they could see in front of the officer. So officer McCarthy at one point was on top of of Mr. Ortega and both of their heads at that point were facing the window across from where those individuals could see. So I mean without speculating I would think that they had a clear shot. Do you have photographs of the scene? Can we look and see whether or not there are railings or solid walls along this corridor? They testified that they had a clear shot out the window and the door and there are no there are photographs in the record. Okay. But there are no no obstacles. Okay. To be able to see. So my point is that they did not see a gun ever. We don't have any proof offered by anyone that there even ever was a secondary weapon on the ground. No one recovered. It was recovered. Officer McCarthy testified that he picked up the gun after immediately after and reholstered it. The secondary the secondary weapon. So we have nothing in the record other than officer McCarthy's testimony that there even was a weapon on the ground. We've got the two foot steps before the shooting with no sounds of rustling also as part of the evidence and we have no DNA on the gun. All of these items of physical evidence and ear witness eye witness evidence contradict officer McCarthy's story. I thought there was DNA on the on the weapon but it was inconclusive. There was it wasn't the same person but they couldn't say whose it was. Okay. So turning to the issue of the DNA officer Howie confirmed in his and he was the lead homicide detective for this investigation. He confirmed in his in his deposition that the DNA was not Mr. Ortega's. That's not my question. The question was were there DNA specimens that were taken off of the revolver from two different donors even though they couldn't say conclusively whether or not it was Ortega. The second sample was inconsistent. They could not they could not determine whose it was but they ruled out the first sample as not being Mr. Ortega. I don't know. I mean I'm not sure why you're having such a difficult time answering my question. My reading of that testimony in the report was that there were two samples detected and that they both did not come from the same donor. Is that correct or not. That's correct. But they couldn't conclusively say the second sample was Ortega. Correct. Okay. Thank you. You're welcome. As far as the inconsistencies that I want to address raised by counsel in terms of McCarthy's officer McCarthy's own statements made. There are four key statements made by key time periods where officer McCarthy gave his version of events. First we have the briefing by Sergeant Karsh. We also have then the statement made after the shooting occurred and officer McCarthy had an opportunity to meet with his attorney. Then we have his deposition. And then finally we have the declaration in support of the motion for summary judgment. There are numerous inconsistent statements regarding the use of the taser. Whether or not Victor grabbed the secondary weapon and grabbed for it grabbed it grabbed for it grabbed for it and pointed it at officer McCarthy. There's three different versions there. There's several different inconsistent statements about what officer McCarthy did when Mr. Ortega allegedly tried to grab the weapon. At one point he testifies that officer McCarthy states or testifies that he blocked Mr. Ortega's hand. On another occasion he said he swatted it away. On another occasion he says he grabbed his right arm and threw him over to his side. And in another one he says that he pushed it away. Those are four different movements. With respect to the briefing I did want to raise one point about that. And in terms of the allegation that officer McCarthy never made the statement to Sergeant Karsh. Sergeant Karsh is the supervising attorney or supervising attorney for officer McCarthy. And again Sergeant Howey was the lead detective investigating this homicide. To this day in response to Sergeant Howey's request that Sergeant Karsh supplement his report to clarify the discrepancy whether or not there was a grabbing of the gun and pointing it at him. That statement has never been clarified. Specifically which statement are you talking about has never been clarified? Okay so turning to the record it's the statement about grabbing the gun and pointing the secondary weapon at... Right but whether officer Karsh made an assumption made a misstatement whatever. On ER 98 officer McCarthy is testifying and they ask him what did Karsh ask you? And he says I was telling him that quote we were fighting and we were fighting over the gun. That's officer McCarthy. Right? Right. So what needs to be clarified? They're asking when did you know he was not trying to get away? Answer, when he grabbed your revolver? Yes. When did he do that? When he reached to grab the revolver? This is officer McCarthy? The test the clarification that I'm discussing is Sergeant Howey the investigating detective had a problem with the briefing and what was said in the briefing and asked that Sergeant Karsh go back and supplement his report and in response to that questions at Sergeant Howey's deposition as to whether or not he got or received a satisfactory answer to how that discrepancy is clarified. Sergeant Howey testifies that that is still an unresolved issue. But Howey and Karsh weren't there so we see cases all the time where well-meaning people get things wrong make assumptions all the time. But this is which is why I'm really trying to focus on officer McCarthy's statement. Statements plural and whether there are internal inconsistencies in what officer McCarthy said and I think that was really going to judge Parker's point which is I don't know that we need to go farther than that. I agree your honor. There are numerous inconsistent statements about and I can go I can go on and on about the taser at one at one part of the statement he said that he's got one hand cuffed puts the taser away and then cuffs the other hand at a different time he says that he has both hands behind his back and then puts the taser and then reholsters the taser. Then in his declaration in support of the motion for summary judgment he completely omits the use of the taser. One other thing about the taser and I see I'm almost out of time is that officer McCarthy in his initial statement said that he told Mr. Ortega to stop or I'll tase you. Not one witness ever heard anything of the sort. Another inconsistency between the evidence and his own statement. Well that's just an omission. They didn't hear it. Right. That's the dog that didn't bark. Yeah. Okay. All right. Thank you very much. Thank you. You do. Very quick. As to the handcuffs I think that the court understood correctly. Okay. As to the whether or not there was a weapon on the ground Mr. Lohr didn't see the weapon but he did see in the same sequence that McCarthy was talking about the fight and just before the shooting he did see the Mr. Ortega reach out and grab the weapon. And reach towards McCarthy's ankle which is where the weapon was. So there's certainly some cooperation. In addition after the secondary weapon was examined there were scrape marks on it indicating it had come across the sidewalk. So can you help me understand why we have why there's appellate jurisdiction here. We've been spending the last half an hour vetting these various inconsistencies. I mean they're legion. Well your honor I think there's there's I would respectfully disagree that legion I'm not sure. I think there's an explanation. For instance we're talking about Karsh. You call that a discrepancy an inconsistency. Again you have responses to these inconsistencies and you have theories about how they occurred and so forth. But I don't see how that adds up to a version of facts construed in favor of the appellees. Well I would say your honor that the if you look at Cruz. Cruz had a number of inconsistencies and two of them were just blatant. One was no weapon. You know why would he reach for it. The other was he's getting out of the car according to the officers. He stands up takes the steps towards him and then after they shoot him they have to cut him out of the car. Right. Okay. These aren't those kinds of issues. These are cases are much more nuanced and aren't the kind of consistency slash inconsistencies found. Right. Which is why I think that's right. I think Cruz is a very extreme case. But this is a Cruz case. It's a Cruz case but. And that's why I go to the inconsistency that goes to the physical evidence about the shooting and the level and the trajectory. Because I think you're right there's inconsistencies and there's material inconsistencies. Correct. Right. And we're just suggesting that these are material and I have one more thing about the DNA. I don't know if that's a critical. I don't think it is. I think I understand the record. Okay. Thank you very much. That case just argued is submitted.
judges: Parker, Tallman, Christen